## LANGDALE *et al. v.* GRIFFIN *et al.*

Where an owner of timber contracts with A that in consideration of A's manufacturing the timber into lumber he will log the sawmill and pay a stated sum per thousand feet for the sawing, and afterwards A transfers his contract to B in consideration that B will carry out his contract for a less sum (the difference between which and the original contract price is to be received by A), and B enters upon the performance of the contract, with the consent of the owner of the timber that B assume A's contract, and the owner of the timber breaches the contract by failing to log the mill, A is not liable to B for such breach.

FEBRUARY 15, 1911.

Action for breach of contract. Before Judge Parker. Clinch superior court. September 4, 1909.

*W. T. Dickerson* and *G. A. Whitaker,* for plaintiffs in error.
*Cranford & Wilcox* and *R. G. Dickerson,* contra.

EVANS, P. J. F. M. Griffin and S. H. Brady brought suit against J. D. Langdale and J. W. Langdale for damages from the breach of an oral contract. It was alleged that the defendants entered into a contract with the plaintiffs, whereby the plaintiffs were to remove their sawmill from another county, erect it upon the land of J. W. Langdale, and saw a certain quantity of timber, the logs to be cut and furnished at the mill by the defendants and to be sawn by the plaintiffs into lumber, for which services the plaintiffs were to receive $4 per thousand feet. The breach of the contract alleged was that the defendants refused to furnish the logs to the mill, to the damage of the plaintiffs. The defendants denied the contract as alleged in the plaintiffs' petition. The trial resulted in a verdict for the plaintiffs in the sum of $2,500, and the court refused to set the verdict aside on motion of the defendants.

It appeared from their own testimony that the plaintiffs had information that the Langdales owned a certain body of timber known as "Florida fractions," and they made a trip to the home of the defendants with a view to securing a contract to saw this timber into lumber. They met J. D. Langdale, who informed them that his brother, J. W. Langdale, owned a certain body of timber, and had contracted with him to manufacture the same into lumber at five dollars per thousand feet. Negotiations were immediately entered into between J. D. Langdale and the plaintiffs, resulting in an agreement whereby J. D. Langdale was to allow the plaintiffs to take his contract and cut the lumber at four dollars per thousand, and J. D. Langdale was to receive the difference between the amount his brother had contracted to pay him and the amount for which the plaintiffs engaged to do the work, to wit, one dollar per thousand. J. D. Langdale explained to the plaintiffs that his brother's lease upon the timber would expire in 13 or 14 months, and that it must be cut within that time, and impressed upon them the importance of moving the mill to the location as quickly as possible. The plaintiffs returned home, dismantled their mill, loaded it on the cars, and had it shipped to the railroad station near the proposed location. After the machinery had reached its destination, the plaintiffs' for the first time saw J. W. Langdale, who was informed that they had as-

sumed the contract of J. D. Langdale for the cutting of the timber; under this contract J. W. Langdale was to log the mill and take the lumber off the skids, J. D. Langdale was to saw the logs into merchantable lumber for five dollars per thousand feet, and the plaintiffs were to pay J. D. Langdale one dollar per thousand feet, and retain the remainder, to wit four dollars, for their services for manufacturing the timber into merchantable lumber. Every feature of the plaintiffs' contract with J. D. Langdale was explained to J. W. Langdale, and he made no objection to it, and agreed to pay the plaintiffs four dollars per thousand feet for sawing the lumber. J. W. Langdale for a time logged the mill, and then discontinued to perform his contract, and sold his timber to a third party, rendering performance impossible. The defendant, J. W. Langdale, testified that he made a trade with his brother, J. D. Langdale, to cut the timber into lumber, and, when informed by the plaintiffs that they had assumed his brother's contract, told the plaintiffs that the timber was not to be cut at random, and only at such time when he had orders for the lumber, and that he did not expect to have his timber cut without being able to sell it; and that he also explained clearly to them that no timber was to be cut unless orders were received which would afford him two dollars per thousand feet net profit; and that the contract was made subject to his right to terminate it by selling the timber. The testimony of J. D. Langdale was corroborative of that of J. W. Langdale.

The contract was verbal, and the parties differed as to its terms. All agreed that J. W. Langdale was the owner of the timber, who had contracted with J. D. Langdale to manufacture it into lumber, and that the plaintiffs assumed J. D. Langdale's contract with his brother, and that J. D. Langdale was to receive one dollar per thousand feet upon the plaintiffs' performing the contract. There is not a syllable of testimony indicating that J. D. Langdale obligated himself to furnish the timber to the mill of the plaintiffs; and if the jury should find the contract as claimed by the plaintiffs in their testimony, the obligation to furnish the timber to the mill was not upon J. D. Langdale, and therefore J. D. Langdale would not be liable for any breach of his brother's obligation to him growing out of a contract which he had transferred, with his brother's consent, to the plaintiffs. Therefore

there could be no recovery against J. D. Langdale for a failure to log the mill. Many elements of damage were claimed by the plaintiffs, one of which was five hundred dollars for expense of removing the mill to the Langdale location. This expense had been incurred before the plaintiffs had any contract with J. W. Langdale, and clearly was not an element of damage which could be recovered against him. The expense of removing the mill was not incurred upon the faith of any contract made with J. W. Langdale. Inasmuch as the case was tried upon an erroneous theory that both defendants were liable for breach of the contract to log the mill, and, as already pointed out, one of them was under no obligation to log the mill, and elements of damage were considered by the jury which were not properly assessable against the other defendant, even should the jury find in favor of the plaintiffs' version of the contract, a new trial is granted to both defendants.        *Judgment reversed.   All the Justices concur.*